UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ANDREA MICHELLE JONES aka ANDREA
MICHELLE SCHMELING, dba OAKWOLD
FARMS, and SHANE DANIEL JONES,

            Debtors.

_____/

Case No. 25-00315-swd
Hon. Scott W. Dales
Chapter 12

## MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                     Chief United States Bankruptcy Judge

## I. INTRODUCTION

This chapter 12 case – the second for Andrea and Shane Jones (the "Debtors") within the last two years – has not proceeded smoothly for a number of reasons. The Debtors' counsel, Paul F. Davidoff, Esq., ascribed the difficulties to a clash between strong-willed individuals all trying to get the job done, perhaps a fair summary.

For her part, chapter 12 trustee Marcia R. Meoli, Esq., (the "Trustee") frequently expressed frustration (in court and out) at the difficulty she experienced in getting the Debtors to produce documents and other information she regarded as necessary to the administration of the case. Significantly, the meeting of creditors under 11 U.S.C. § 341 has not concluded, having been adjourned almost monthly since March, evidently for document production.[1] The next adjourned "first meeting" is scheduled for October 15, 2025. Indeed, Ms. Jones confirmed in her testimony

---

[1] References to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532. References to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

during the confirmation hearing the difficulties the Trustee had in verifying Mr. Jones's government-issued photo identification – among the most basic duties of a debtor and trustee to be performed at the beginning of any case. *See* 11 U.S.C. § 521(h); *see also* Fed. R. Bankr. P. 4002(b)(1)(A).

Even as of the second confirmation hearing, the Debtors' schedules remained in flux (amended as recently as last month to add a tractor to Schedules A/B and D, and three "handshake lessors" to Schedule G). *See* Amended Schedule A/B, Schedule D, Schedule G, Declaration About Schedules, for Individual (ECF No. 120). Furthermore, the Debtors have not yet scheduled (and therefore, have underreported) their actual 2024 state and federal income tax refunds (according to Ms. Jones's confirmation testimony). Given the constant ebb and flow of this case, the court certainly understands the Trustee's exasperation.

The Debtors, likewise, expressed frustration with the Trustee for her informal and repeated document requests and other administrative activities. They have resorted to shouting, insults, and at least one misogynistic invective the court will not repeat here. *See* Letter from Hon. Scott W. Dales to Marcia R. Meoli, Esq., dated Sept. 16, 2025 (ECF No. 113).

The court, too, expressed its pique, chiding the Debtors and their counsel for various delays, discourtesies (or worse), and chronic unpreparedness, at one point denying confirmation of their second amended plan after the Debtors conceded they were not ready to proceed with a contested confirmation hearing as scheduled. *See* Order Denying Confirmation (ECF No. 112). Furthermore, their counsel's failure to promptly read the court's order shortening notice last month – notice the court reluctantly shortened at his request – caused the Debtors to miss the court's deadline for serving the Third Amended Plan and other documents (including a hearing notice) which required them to file another motion under Bankruptcy Rule 9006. The court also

rebuffed the efforts of both parties to augment the record of the second confirmation hearing, without permission, and admonished counsel. *See* Order dated Oct. 9, 2025 (ECF No. 152) ("Both lawyers, with decades of experience, should know better than to pursue additional legal argument and factual development through back door filings, after the court has closed proofs, heard closing arguments, and commenced deliberation.").

Nevertheless, due in large part to Ms. Jones's remarkable persistence and pluck, the court extended the statutory deadlines for conducting the confirmation hearing under § 1224 (and related service deadlines) several times, ultimately extending the statutory deadline to October 7, 2025, albeit with conditions and a reminder to present evidence. *See* Order dated Sept. 19, 2025 (ECF No. 124) ("At the confirmation hearing, the court expects the Debtors to provide proof that the three entities they recently added to Schedule G do not oppose confirmation of the Third Amended Plan, and to proceed with additional proofs under § 1225."). The Trustee, the Debtors, and Ignite Credit Union appeared at the contested confirmation hearing on that date through counsel. In addition to confirmation of the Debtors' Third Amended Chapter 12 Plan of Reorganization (the "Third Amended Plan"), the court considered the Trustee's Objection to Exemptions of Debtor [sic] (ECF No. 139, the "Exemption Objection"), which the parties properly regarded as necessary to resolve disputes about liquidation value.

The Debtors each testified forthrightly and the court admitted five exhibits without objection, two numbered exhibits from the Debtors[2] and three lettered exhibits from the Trustee.[3] The court has considered the testimony, the Third Amended Plan, and the exhibits admitted during

---

[2] The court admitted Exhibit 1 (Jones Feasibility Analysis) and Exhibit 2 (the Liquidation Analysis Debtors Addendum 5, attached as Exh. A to the Third Amended Plan). Without objection, the court and the parties relied on the online version of Exhibit 2 because counsel did not provide the court with a paper copy during the hearing.

[3] The court admitted the Trustee's Exhibit A (a spreadsheet printout with the handwritten title "Feasibility"), Exhibit B (the Debtors' amended Schedules I and J (dated June 23, 2025) which the court printed out during the proceedings as an unusual courtesy because the Trustee did not bring the document to the hearing), and Exhibit C (an "asset list" spreadsheet printout the Trustee prepared to counter Exhibit 2).

the hearing, and for the following reasons will overrule the Exemption Objection in part, sustain it in part, and deny confirmation of the Third Amended Plan.

The court first addresses the Exemption Objection because it bears on the liquidation value, a key requirement of plan confirmation.

## II. EXEMPTION OBJECTION

The Bankruptcy Rules explicitly require the Trustee, as the "objecting party," to shoulder "the burden of proving that the exemptions are not properly claimed."  Fed. R. Bankr. P. 4003(c). As the objecting party, the Trustee must disprove the validity of any exemption by a preponderance of the evidence.  *In re Richards*, 642 B.R. 777, 783 (6th Cir. B.A.P. 2022).

The Trustee objected to three of the Debtors' exemptions: (1) the exemptions for livestock[4] valued in the aggregate at $10,100.00 under § 522(d)(3); (2) the exemption for $1,400.00 in crops reserved to feed farm animals under § 522(d)(3); and (3) the exemption for $250.00 in a Flagstar Bank health savings account under § 522(d)(8).  *See* Exemption Objection at pp. 1-2.  The court will address the exemptions in that order.

Most generally, the court notes that the Trustee, despite having the burden of proof, offered no meaningful evidence in support of her objections, only argument.[5]  She called no witnesses during the confirmation hearing, cited no caselaw, and offered no documentary evidence on the exemption questions.  Ms. Jones's testimony on cross-examination constitutes the only evidence regarding the reserved crops and livestock, and the testimony (which the court credits) does not favor the Trustee's position.

---

[4] The Trustee objected to Debtors' exemptions for: one breeding bull, six beef cows, three beef heifers, three calves, one dairy cow, and three pigs.  *See* Exemption Objection at p.1.  Because the Trustee aggregated all the animals into a single exemption objection, the court will do the same.

[5] The court takes judicial notice of the most recent version of Schedule C (ECF No. 80).  Fed. R. Evid. 201.

First, the court will overrule the Trustee's objection to the Debtors' livestock exemption because Ms. Jones's testimony persuaded the court (and evidently the Trustee, too) that they keep the livestock for "personal, family, or household use of the debtor or a dependent of the debtor." 11 U.S.C § 522(d)(3).[6]  Ms. Jones consistently and credibly testified that her young family uses the animals exclusively to provide meat and milk.  The Trustee, considering Ms. Jones's testimony and having no evidence of her own, conceded the objection during her closing argument.  The court finds Ms. Jones's testimony persuasive on this point and will overrule the objection regarding the livestock.

For similar reasons, the court will overrule the Trustee's objection to the Debtors' exemption for $1,400.00 worth of crops to feed the livestock.  At the confirmation hearing, Ms. Jones testified that her family has set aside $23,600.00 worth of crops (which the Debtors claim as exempt to the extent of $1,400.00) as feed for their livestock, not for sale.  During this part of her testimony, which the court credits, Ms. Jones again stated that the family uses the livestock exclusively for food, and they use the reserved crops to feed the livestock.  Under the circumstances, it is easy to conclude they use the exempted crops for personal, family, or household purposes.

The Trustee has a different view of the testimony in this respect, but without any contradictory documents or testimony, the evidence preponderates in the Debtors' favor on the crop exemption for $1,400.00 worth of livestock feed.

Finally, the court will sustain the Trustee's objection to Debtors' exemption for $250.00 in their Flagstar Bank health savings account because the Debtors conceded that the account is not a

---

[6] To determine whether exempted property is for "personal, family, or household use," the court considers whether the debtor is using the property for "commercial" purposes. *See In re Walkington*, 42 B.R. 67, 70 (Bankr. W.D. Mich. 1984) (these cattle are not held 'primarily for the personal, family, or household use of the debtor or dependent of the debtor'...[u]nlike other household animals or pets the debtor's cows are held primarily for commercial purposes.").

part of unmatured life insurance.  *See* Debtors' Response to Trustee's Objection to Exemptions (ECF No. 142) at p. 2.

In summary, the court overrules the Exemption Objection in part (allowing $10,100.00 worth of livestock and $1,400.00 of crops for animal feed) and sustains the Exemption Objection in part (for $250.00 in the Flagstar Bank health savings account).[7]

## III. CONFIRMATION OF THE THIRD AMENDED PLAN

Section 1225 prescribes seven prerequisites to confirmation that a chapter 12 debtor has the burden of establishing.  *In re Perkins*, 581 B.R. 822, 838 (6th Cir. B.A.P. 2018).  At the confirmation hearing regarding the Third Amended Plan, the parties focused on the Debtors' good faith (or lack thereof) under § 1225(a)(3), the liquidation value or "best interest of creditors" test under § 1225(a)(4), and feasibility under § 1225(a)(6).  The court also considered the general requirement of compliance with the Bankruptcy Code under § 1225(a)(1).

The court agrees with the Trustee that most chapter 12 debtors who seek confirmation tend to supply the court not just with summaries (as here) but with documents fortifying asset valuations, historic performance, market information supporting projections, and other necessary details.  As a general rule, providing more granularity makes a more compelling case for factual findings regarding asset value and feasibility which, truth be told, are (at best) a bankruptcy judge's educated guess.  Here, each exhibit (whether from the Trustee or the Debtors) is simply a summary or compilation of data, which the parties endeavored to fortify or undermine with the Debtors' live testimony.  No one objected to the admission of these exhibits, or sought a limited admission, so the court considers them as evidence for all purposes.  Fed. R. Evid. 105, 402, and 1006(a).

---

[7] As set forth below, the court will add $250.00 to its liquidation analysis on account of the Exemption Objection.

For example, to meet the "feasibility" test of § 1225(a)(6), the Debtors offered Exhibit 1, a chart that Ms. Jones evidently prepared to compare their Profit or Loss From Farming for 2023 and 2024 (IRS Schedule F (Form 1040)) and reciting their forecast for 2025.  The exhibit shows substantial variations in crop sales and farm expenses from 2023 to 2024, an increase in crop sales (between the 2024 actual and the 2025 predicted values), and a decrease in farming expenses over the entire three-year period.  Ms. Jones testified that the Debtors shifted their farming operations from a mixture of corn and soybean contract farming to primarily farming corn and wheat as row crops.  Ms. Jones explained that soybean "inputs" are less expensive than corn inputs, but that corn provides significantly greater return.  Mr. Jones corroborated that testimony with slightly more detail.

On the expense side, Ms. Jones explained that to reduce expenses the Debtors discontinued cultivation of unproductive parcels that, in 2023, they learned were unprofitable to farm.  The testimony was credible, albeit indefinite.  The Trustee endeavored to show that the Debtors omitted various secured debts from their feasibility calculation in Exhibit 1, but Ms. Jones explained that the Debtors pay for these expenses, such as the home equity loan, residential mortgage, and automobile loan, from their non-farm ("W2") income reflected on Schedules I & J (Exhibit B). The Trustee offered no testimonial evidence in support of her objection, and her cross-examination did not meaningfully undercut the Debtors' feasibility analysis.  Recognizing that the fourth column of Exhibit 1 is simply a prediction because the 2025 harvest is not complete, and acknowledging that the evidence is not clear and convincing, the court nevertheless finds by a preponderance of the evidence – the standard applicable[8] – that the Debtors can generate a surplus

---

[8] *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025) ("The usual standard of proof in civil litigation is preponderance of the evidence."); *Grogan v. Garner*, 498 U.S. 279, 287 (1991) (same as applied in bankruptcy setting); *see also In re Akers*, 594 B.R. 362, 369 (Bankr. W.D. Va. 2019) ("The Debtor bears the burden to prove by a preponderance of the evidence that the Court should confirm a proposed [chapter 12] plan").

from farming operations of $84,222.21 with which to fund their plan payments (including a $11,679.72 increase in the liquidation value, depicted on Exhibit 2, as deemed amended during the hearing).[9]

This finding, favorable to the Debtors on the question of feasibility under § 1225(a)(6), is a necessary but not sufficient condition for confirmation; they must also prove that the unsecured creditors will be no worse off under the Third Amended Plan, as compared to a hypothetical liquidation under the provisions of chapter 7.  11 U.S.C. § 1225(a)(4).  On this point, the Debtors stumble.[10]

To meet their burden under § 1224(a)(4)'s liquidation test, the Debtors offered (and the court admitted into evidence) Exhibit 2, which they attached as an exhibit to the Third Amended Plan.  The Debtors' bottom line or "Net Liquidation Proceeds" on that exhibit is $63,320.28, but for reasons the Trustee elicited through her cross examination, the court cannot accept that figure at face value.

First, to the Debtors' bottom line, the court must add $12,674.56 in state and federal 2024 income tax refunds.  Although Ms. Jones testified that the 2024 returns are "on extension" until later this month, she also testified that the Debtors are entitled to these amounts.  Because the Debtors' 2024 tax refunds predate the filing of the current bankruptcy petition, they are included within the bankruptcy estate and must be included in the hypothetical liquidation.  *See In re O'Brien*, 443 B.R. 117, 137 (Bankr. W.D. Mich. 2011) (concluding that tax refunds for the year pre-dating the bankruptcy petition are property of the estate.).

---

[9] The Third Amended Plan calls for a $63,500.00 total dividend to unsecured creditors over the five-year plan term, at the rate of $12,700.00 annually.  In an effort to settle the controversy over liquidation values during the hearing, the Debtors' counsel committed his clients to pay unsecured creditors a total dividend of $75,000.00, at the rate of $15,000.00 annually.  As discussed below, however, even the increased payment to unsecured creditors does not meet the best interest of creditors test.

[10] The court recognizes that Trustee's Exhibit C and Debtors' Exhibit 2 differ in several material respects, but it will limit its discussion of the liquidation values to the issues the parties raised during the hearing.

In addition, as the Debtors conceded in response to the Exemption Objection, they are not entitled to exempt their Flagstar Bank health savings account (adding another $250.00 towards the liquidation analysis).

Finally, although Exhibit 2 reflects a $4,450.00 reduction in net liquidation value on account of an exemption in the Ford F350 pickup truck, the Debtors' Amended Schedule C (ECF No. 80), reflects no such exemption.  Making these adjustments, the Debtors' actual liquidation value (based on their Exhibit 2 as modified based on the Debtors' testimony and the court's review of amended Schedule C), reflects a liquidation value of $80,694.84 – an amount higher than the amount summarized in the Third Amended Plan ($63,320.00) and even as deemed amended on the record ($75,000.00).  Therefore, the Third Amended Plan, as deemed amended, does not satisfy § 1225(a)(4).

As for the Debtors' good faith, the court does not doubt it.  They obviously have negotiated with their secured creditors in good faith, resolving all but one confirmation objection by Farm Credit Services (which the court regards as abandoned due to the creditor's failure to appear at the hearing to prosecute it).  It is true, as the Trustee argued, that the Debtors have been inattentive to the accuracy of their schedules (as many debtors are), perhaps due to the pressure of raising five children (including a newborn), holding down two jobs, and running a family farm.  Nevertheless, as just noted, the Debtors' unduly casual approach to the accuracy of their schedules – reflected most recently at trial regarding the testimony about the value of the 2024 tax refunds previously scheduled at $0.00 and the untimely addition of the three handshake lessors to Schedule G last month – precludes the court from finding that the prosecution of the plan complies with applicable law or other applicable provisions of the Bankruptcy Code.  The Joneses, like all debtors, have substantial disclosure and notice obligations under § 521(a)(1) and a duty to cooperate with the

Trustee under § 521(a)(3).  The evidence of the Debtors' meeting these obligations does not preponderate in their favor.

At times the Debtors have behaved uncivilly (as they and their counsel conceded on the record).  As of confirmation, the first meeting remains open, the schedules remain in flux as noted above, and the Trustee continues to express understandable frustration – frustration the court has also expressed – regarding the Debtors' prosecution of their case.  Indeed, in an effort to mitigate the prejudice to the three entities the Debtors belatedly added to Schedule G, the court required the Debtors "to provide proof that the three entities … do not oppose confirmation of the Third Amended Plan …").  *See* Order dated Sept. 19, 2025 (ECF No. 124).  The Debtors ignored this requirement, even though the Trustee alluded to the issue during the hearing.

Chapter 12 debtors enjoy a presumption of good faith, and in the absence of objection, the court may "without receiving evidence, determine that the plan has been proposed in good faith and not by any means forbidden by law."  Fed. R. Bankr. P. 3015(f)(2).  Here, however, the Trustee has objected on this ground, and although she herself declined to testify, the court cannot say that the evidence preponderates in the Debtors' favor on the question of whether "the plan has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1225(a)(3).  The law forbids confirmation of a plan after inadequate disclosure and notice, even assuming the Debtors acted in good faith.  Finally on this point, a debtor's prompted promise during a confirmation hearing to refrain from further insulting a trustee, and to cooperate with her after confirmation, is a tentative step in the right direction, but it certainly does not qualify as evidence that the Debtors have complied with their preconfirmation obligations under the Bankruptcy Code.

IV. CONCLUSION AND ORDER

For the foregoing reasons, the court will overrule the Exemption Objection in part (as to reserved crops and livestock) and sustain the Exemption Objection in part (as to the health savings account).

Furthermore, the court finds that the Debtors have not met their burden of proof with regard to the liquidation test (§ 1225(a)(4)) and compliance with the provisions of the Bankruptcy Code (§ 1225(a)(1)) and therefore will deny confirmation of the Third Amended Plan.  Although the court recognizes that denial of confirmation is grounds for dismissal of a chapter 12 case under 11 U.S.C. § 1208(c)(5), it will address the Trustee's dismissal motion in the ordinary course.  *See* Trustee's Motion to Dismiss Chapter 12 Case (ECF No. 145).

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

(1) The Exemption Objection is overruled in part (as to the reserved crops and livestock), and sustained in part (as to the health savings account);

(2) Confirmation of the Third Amended Plan, as deemed amended during the hearing, is DENIED;

(3) The Clerk shall schedule the hearing to consider the Trustee's Motion to Dismiss Chapter 12 Case (ECF No. 145) in the ordinary course; and

(4) The parties shall comply with the court's exhibit retention policy, available at: https://www.miwb.uscourts.gov/sites/miwb/files/Judge%20Dales%20Procedure%20re%20Exhibit%20Retention%20%28002%29.pdf.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Bankruptcy Rule 9022 and LBR 5005-4 upon the Debtors,

Marcia R. Meoli, Esq., chapter 12 trustee, Paul F. Davidoff, Esq., the United States Trustee, and all entities requesting notice of this proceeding, and entities appearing on the creditor matrix.

END OF ORDER

**IT IS SO ORDERED.**

**Dated October 15, 2025**



Scott W. Dales
United States Bankruptcy Judge