UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ANDREA MICHELLE JONES aka ANDREA
MICHELLE SCHMELING, dba OAKWOLD
FARMS, and SHANE DANIEL JONES,

          Debtors.

_____/

Case No. 25-00315-swd
Hon. Scott W. Dales
Chapter 12

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

I. INTRODUCTION

The court has already denied the confirmation of two proposed chapter 12 plans by Andrea and Shane Jones (the "Debtors"), most recently on October 15, 2025, after conducting an evidentiary hearing and after extending the statutory deadline for confirming their plan on three separate occasions. *See* Memorandum of Decision and Order dated Oct. 15, 2025 (ECF No. 155, the "MDO") (denying confirmation).

In its MDO, the court recognized that denial of confirmation is grounds for dismissal of a chapter 12 case under 11 U.S.C. § 1208(c)(5) but elected instead to address the dismissal motion of chapter 12 trustee Marcia R. Meoli, Esq., (the "Trustee") in the ordinary course. *See* Trustee's Motion to Dismiss Chapter 12 Case (ECF No. 145, the "Dismissal Motion"). The Clerk scheduled the hearing on the Dismissal Motion for December 2, 2025.

Meanwhile, after the second unsuccessful confirmation hearing, the Debtors scrambled to save their case by filing a response to the Dismissal Motion (ECF No. 164), and two separate motions: (1) the Debtors' Motion To File Consents (ECF No. 158, the "Consents Motion"), and

(2) the Debtors' Motion to Schedule Confirmation Hearing (ECF No. 162, the "Motion to Schedule").[1]  The Clerk scheduled hearings to consider the Motion to Schedule and the Consents Motion for December 2, 2025, to coincide with the hearing on the Trustee's Dismissal Motion.

The court held a hearing in Grand Rapids, as scheduled, to consider the three motions.  The Debtors, the United States Trustee, and creditors Ignite Credit Union, Kellogg Community Credit Union ("Kellogg"), and First National Bank of America all appeared through counsel.  The Trustee, previously appointed as counsel to represent the estate, also appeared.  The court heard oral arguments and took the three motions under advisement.  For the following reasons, the court will grant the Dismissal Motion and deny the Debtors' two motions.

## II. ANALYSIS

A. The Consents Motion

In a prior order predating the hearing to consider confirmation of the Debtors' Third Amended Chapter 12 Plan of Reorganization (ECF No. 119, the "Third Amended Plan"), the court endeavored to address its concerns about the Debtors' omission of three entities from whom the Debtors allegedly leased farmland, gratis, through "handshake" deals.  *See* Order dated Sept. 19, 2025 (ECF No. 124).  Because the Debtors omitted these entities from Schedule G and their mailing matrix, and because the statutory deadline (as extended) for confirming a plan was fast approaching, the court agreed, in essence, to forgive the Debtors' tardiness in giving notice to the three "handshake lessors" if the three affirmatively consented to confirmation of the Third Amended Plan.  To accomplish this, the court advised the Debtors that "[a]t the confirmation hearing, the court expects the Debtors to provide proof that the three entities they recently added to Schedule G do not oppose confirmation of the Third Amended Plan …"  *Id.* at p. 2.

---

[1] The Debtors attached their proposed Fourth Amended Chapter 12 Plan of Reorganization (the "Fourth Amended Plan") as an exhibit to the Motion to Schedule, rather than filing it as a separate docket event.

Debtors' counsel, however, "inadvertently forgot to file" the consent documents from the three omitted lessors at or before the last confirmation hearing, and therefore filed the Consents Motion, unfortunately without providing any authority for the relief requested. *See* Consents Motion at p. 1 (preface). This leaves the court to speculate that counsel intended to rely on Fed. R. Civ. P. 59(a)(2) (incorporated by Fed. R. Bankr. P. 9023), which authorizes the court in a nonjury trial to take additional testimony or amend findings.

In support of the Consents Motion, Mr. Davidoff attempted to blame the Trustee for screaming at him during the confirmation hearing and causing him to lose sight of this aspect of his client's proofs. His hyperbolic description of the Trustee's behavior at the confirmation hearing perhaps borders on dishonest but is unquestionably unpersuasive.[2] Assuming, *arguendo*, that the supposed histrionics of the Trustee could account for Mr. Davidoff's failure to offer the consents of TecNiq, Inc., and Chad and Tania Doseck, Mr. Davidoff admitted that he did not bring Kim Rogers's consent document to the hearing because he was not aware that he had received it (by email) the day before the October 7, 2025 confirmation hearing. He cannot blame the Trustee for his failure to check his email before the hearing. *See also infra*, n. 3.

Regardless of the court's doubts about Mr. Davidoff's reasons for reopening the record of the second unsuccessful confirmation hearing, and the absence of cited authority for doing so, it would make more sense for the court to consider the consent documents in connection with the proposed hearing to consider confirmation of the Fourth Amended Plan – relief he requests through

---

[2] During oral argument on December 2, Mr. Davidoff impugned the Trustee's motives, suggested she resign, and accused her of driving him to distraction by repeatedly interrupting and screaming from behind during the second confirmation hearing. He also said she "deluged" the Debtors with numerous dismissal motions and objections "one after the other after the other." The docket, and the court's recollection of proceedings, however, is at odds with his extravagant account of events. Indeed, the Trustee filed a single dismissal motion in this case and objections to the multiple versions of the Debtors' plan.

the Motion to Schedule to which the court now turns.  The court, therefore, will deny the Consents Motion.

      B. <u>The Motion to Schedule</u>

During the December 2 hearing, Mr. Davidoff confessed he had assumed the hearing, which the court scheduled to consider his clients' request *to schedule* a third confirmation hearing, was itself the confirmation hearing for the Fourth Amended Plan.  The Trustee pointed out, however, that the Debtors have not formally filed the Fourth Amended Plan (except as an exhibit to the Motion to Schedule) or given the required notice, and the court advised him that his motion only asked to schedule a confirmation hearing, not to extend the various statutory deadlines. Indeed, the court has not issued any order granting the Motion to Schedule, and the docket contains no notice to creditors of a confirmation hearing or deadlines for objecting to the Fourth Amended Plan.  *See* Fed. R. Bankr. P. 2002(a)(8) (requiring 21 days' notice of confirmation hearing and time to object to confirmation in chapter 12 cases).  The docket establishes that Mr. Davidoff's office served the Motion to Schedule (and therefore the Fourth Amended Plan) only on the Trustee and United States Trustee (ECF No. 163).  It is unreasonable under these circumstances for him to have assumed that the court would consider confirming a plan that he and his clients have not served on *any* creditors.

Evidently recognizing his error, Mr. Davidoff pivoted at the hearing by arguing that the court should schedule confirmation of the Fourth Amended Plan, distorting the docket by repeatedly stating that no creditor has objected to the plan.[3]  When the court advised him that in

---

[3] According to Mr. Davidoff, Kellogg's counsel sent him an email on November 21, 2025, expressing concern about the Fourth Amended Plan, but Mr. Davidoff, who started his Thanksgiving celebration early to accommodate his daughter's schedule, did not see the email until November 26, when he returned to the office.  Opposing counsel, however, after hearing no response to the concerns he expressed in his November 21 email, filed the objection on November 25.  Mr. Davidoff eventually responded to Kellogg's November 21 email on November 26 with assurances that the plan would not harm the credit union, but he says he was not aware of the objection at that time.  This is

fact Kellogg's objection (ECF No. 169) remains outstanding, Mr. Davidoff explained that he was on the verge of negotiating a settlement by email with the creditor's representative last week (before the Thanksgiving holiday) and would be happy to clarify the plan's treatment of the credit union with yet another amended plan if they insisted – a promised Fifth Amended Plan.  In his view, the objection was no longer an objection.  Understandably, Kellogg's counsel was unwilling to withdraw the objection premised on Mr. Davidoff's word alone, without seeing the actual amendatory language.  For his part, Mr. Davidoff cannot ignore emails with opposing counsel for nearly a week spanning the Thanksgiving holiday and then expect opposing counsel to agree to an improvised explanation of unspecified plan language on the fly during a hearing early the next week.

The court's repeated references to § 1224 deadlines in this case, including its remark during the December 2 hearing that the deadline for confirming a plan in this case has already expired (despite the court's extending it three times), evidently missed their target:  Mr. Davidoff has not moved to enlarge the deadline under § 1224, and the court is unwilling to grant an unmade motion.[4] Even if Mr. Davidoff had so moved, the court perceives no basis for extending the deadline for a fourth time.  Under the circumstances, scheduling yet another confirmation hearing is pointless. The court will deny the Motion to Schedule.

C. <u>Dismissal Motion</u>

The Trustee's Dismissal Motion depends largely on the court's prior denials of confirmation (on two occasions) and resulting prejudicial delay to the Debtors' creditors.  Although two creditors

---

surprising because, as an attorney, he participates in the court's CM/ECF filing system and thereby consents to electronic service of documents, such as the objection.  *See* Electronic Case Filing Administrative Procedures, Part I.C.5.  In any event, despite stating several times at the December 2 hearing that no creditors had objected to the plan, by then he had certainly discovered the credit union's objection: on Thanksgiving Day he emailed the creditor's counsel asking him to withdraw it, based on his emailed assurances from the day before.  Whether intentionally or inadvertently, Mr. Davidoff nearly garbled the record on this crucial point.

[4] References to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532.

who attended the December 2 hearing were agnostic about dismissal, Kellogg supported dismissal, mainly based on the delays in this case.  The United States Trustee also supported dismissal.

The Bankruptcy Code defines "cause" to dismiss a chapter 12 case as including, as relevant here, "unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors," or "denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan…"  11 U.S.C. § 1208(c).  As an additional ground for dismissal, at the December 2 hearing the Trustee suggested (based on an anonymous tip) that Mr. Jones has failed to pay a "domestic support obligation that first [became] payable after the date of the filing of the petition."  11 U.S.C. § 1208(c)(10); *see also* Third Objection to Confirmation of Chapter 12 Plan and Objection to Other Pending Matters (ECF No. 168) at ¶ 3(B) ("Trustee has been told that Mr. Jones has gone into default on the DSO claim.").[5]

As noted in the previous section, Congress went to some lengths to ensure that chapter 12 cases move quickly – first by requiring debtors to file their plans within 90 days of the order for relief, and second by requiring the court to conclude the confirmation hearing within 45 days after the debtors file their plans.  *See* 11 U.S.C. § 1221 (90 days to file) and § 1224 (45 days to confirm); *see also Haffey v. Crocker (In re Haffey)*, 576 B.R. 540, 550 (B.A.P. 6th Cir. 2017) ("[t]hese mandatory time periods are included so that 'chapter 12 cases would be processed expeditiously by the bankruptcy courts and would not be subject to delay so often characteristic of chapter 11 cases.'") (citations omitted).  The Debtors have obviously fallen short of this requirement, having had to rely on numerous extensions under § 1224.  And as noted above, they have not requested another extension under § 1224, albeit through the inattention of counsel.  Instead, counsel argued

[5] Because the Trustee's DSO-related allegation is based simply on an anonymous tip and was not included in the Dismissal Motion, the court's decision today does not rest on § 1208(c)(10), as it did in the Debtors' prior chapter 12 case.  *See* Order dated Dec. 3, 2024, ECF No. 152, Case No. 24-00842.  Additionally, at the December 2 hearing Mr. Davidoff reported that Mr. Jones is current on his post-petition domestic support obligations.

that the Fourth Amended Plan (or perhaps a soon-to-be-filed Fifth Amended Plan) is confirmable and not subject to objection.

Obviously, Kellogg's objection remains outstanding (ECF No. 169), and so does the Trustee's (ECF No. 168). Moreover, the Fourth Amended Plan (which the Debtors have not properly filed or served) simply increases the liquidation value in the text of the document, evidently to respond to the court's MDO denying confirmation of the Third Amended Plan, but leaves the actual liquidation analysis from the Third Amended Plan unchanged. *Compare* Third Amended Plan at Ex. A *with* Fourth Amended Plan at Ex. A. Counsel's slipshod and herky-jerky approach to this case flouts procedural rules and ignores statutory requirements, and no amount of rhetorical posturing during the December 2 hearing makes up for these shortcomings. The Fourth Amended Plan (or perhaps the Fifth) arrives too late in the day, and what's worse, misses the runway altogether. Accordingly, the court finds cause to dismiss under § 1208(c)(5).

For similar reasons, the court finds prejudicial delay. First, because the Debtors blew the third extended deadline under § 1224 for getting their plan confirmed (October 7, 2025) and failed to request a fourth extension under the statute, the court easily finds that the delay prejudices creditors. Creditors have a right to expect the case to move apace and in line with statutory requirements and the Debtors repeatedly disappointed that expectation. *Cf. In re Peoples*, 345 B.R. 840, 845-846 (N.D. Ohio 2006) ("bankruptcy does not operate solely for the debtor's benefit; creditors have the right to expect that they will be treated fairly within the framework provided for by the Bankruptcy Code."). Even assuming that Debtors' counsel had thought to seek a fourth extension under § 1224, and even assuming the court had granted the extension, the court would be obliged to require the Debtors to properly file and serve the Fourth (or Fifth) Amended Plan and schedule a confirmation hearing sometime in mid-to-late January or early February (depending

on the holidays and the court's schedule) so that creditors could receive sufficient notice under the rules. *See* Fed. R. Bankr. P. 2002(a)(8). The court notes, too, that secured creditors have dispatched lawyers at considerable expense to two confirmation hearings already – lawyers whom they have paid to prepare for the hearings – and would presumably do the same were the court to schedule a third. The additional delay and resulting prejudice are not theoretical.

Indeed, during the December 2 hearing, Kellogg voiced its frustration with having its state law remedies stayed under § 362(a) for the ten months this case has already been pending, and the additional delay resulting from counsel's missteps only adds salt to that wound. Given this statutory framework, mounting legal expenses, and the effect of the automatic stay on creditors over the last ten months, the court finds the delays in confirmation unreasonable, prejudicial, and attributable to the Debtors and their counsel. *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993) (holding that client-principal may pay the price for attorney-agent's neglect).

## III. CONCLUSION AND ORDER

Mr. Davidoff's general lecture to the Trustee at the December 2 hearing about the goals of reorganization based on his fifty-five years in practice and her supposed obligation to assist his clients as a chapter 13 trustee might have done,[6] do not excuse ignorance or disregard of statutory requirements. And long service does not justify shortcuts.

Here, Mr. Davidoff's slapdash approach to disclosure and confirmation requirements – for example, treating the confirmation hearing as just another part of an ongoing conversation with the court rather than a formal and limited opportunity to make a record and amending schedules in light of new information belatedly if at all – doomed the Debtors' plans. More generally,

---

[6] The Bankruptcy Code charges a chapter 13 trustee, but not a chapter 12 trustee, to "advise, other than on legal matters, and assist the debtor in performance under the plan…" *Compare* 11 U.S.C. § 1302(b) *with* § 1202(b).

schedule deficiencies (the late addition of the three handshake entities on Schedule G, the continuing failure to schedule the 2024 tax refund, and the omission of creditor Lewis Reed and Allen from Schedule F, to list a few) undermined the Debtors' case.

And as the court recognized in its MDO denying confirmation of the Third Amended Plan, personality clashes played a role, too.  Incivility, described on the record and in an earlier opinion, earned the Trustee's distrust, not her cooperation.  The court would have expected an experienced debtors' counsel – one long-admired for civility – to bridge any gaps between his clients and the Trustee, especially with respect to the latter's reasonable requests for documents and other information bearing on the administration of the case and confirmation of a plan, but sadly the parties damaged their relationship beyond repair.

In the end, despite the court's having bent over backwards with numerous extensions, shortened notice periods, and other scheduling accommodations, and despite the remarkable determination of the Debtors, this case leaves only a common sense of disappointment and regret for all who participated.  We can and should do better, for debtors and creditors alike.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

(1) The Consents Motion is DENIED;

(2) The Motion to Schedule is DENIED; and

(3) The Dismissal Motion is GRANTED, the Trustee is discharged, and her bond may be cancelled.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtors,

Marcia R. Meoli, Esq., Paul F. Davidoff, Esq., the United States Trustee, and all entities requesting

notice of this proceeding, and entities appearing on the creditor matrix.

END OF ORDER

**IT IS SO ORDERED.**

**Dated December 5, 2025**



Scott W. Dales
United States Bankruptcy Judge